1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILLIAMS & CONNOLLY LLP**
Brendan V. Sullivan, Jr. (admitted *Pro Hac Vice*)
**E-mail:** bsullivan@wc.com
William R. Murray, Jr. (admitted *Pro Hac Vice*)
**E-mail:** bmurray@wc.com
Steven M. Cady (admitted *Pro Hac Vice*)
**E-mail:** scady@wc.com
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

**MANATT, PHELPS & PHILLIPS, LLP**
John M. LeBlanc (SBN 155842)
**E-mail:** JLeBlanc@manatt.com
Ileana M. Hernandez (SBN 198906)
**E-mail:** IHernandez@manatt.com
Michael C. Godino (SBN 274755)
**E-mail:** MGodino@manatt.com
11355 W. Olympic Blvd
Los Angeles, California 90064
Telephone: (310) 312-4228
Facsimile: (310) 914-5855

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OHAD BARKAN,<br>Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH NET OF CALIFORNIA, INC., HEALTH NET LIFE INSURANCE CO., MANAGED HEALTH NETWORK, INC., HEALTH NET, INC., and CENTENE CORP.,<br><br>Defendants. | Case No.: 2:18-cv-06691-MWF-AS<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BILATERAL ARBITRATION**<br><br>Motion Hearing:<br>Judge: Hon. Michael W. Fitzgerald<br>Date: October 22, 2018<br>Time: 10:00AM |

# TABLE OF CONTENTS

BACKGROUND ........................................................................................1

ARGUMENT ..........................................................................................4

I.      The FAA Governs the Arbitration Clause....................................4

II.     The Arbitration Provision Is Enforceable. ...................................4

III.    All of Mr. Barkan's Claims Fall Within the Arbitration Clause....................6

IV.     Mr. Barkan Is Bound By, and All Defendants May Enforce, the Arbitration Clause.................................................................7

V.      The Arbitration Provision Does Not Permit Class Arbitration. ....................8

CONCLUSION .....................................................................................10

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BILATERAL ARBITRATION

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AlixPartners, LLP v. Brewington*, 836 F.3d 543 (6th Cir. 2016) ................................9

*AT&T Mobility LLC v. Concepcion*, 563 U.S 333 (2011)....................................4, 5, 8

*Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914 (9th Cir. 2011) .................6

*Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002) .........................5

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) (per curiam) ..............................4

*Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930 (N.D. Cal. 2015).....................9

*Eshagh v. Terminix Int'l Co.*, 588 F. App'x 703 (9th Cir. 2014) ................................8

*Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013) ........................6

*Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) (per curiam)......................................................................4

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)....................................................................6

*Opalinski v. Robert Half Int'l, Inc.*, 677 F. App'x 738 (3d Cir. 2017).......................9

*Reddam v. KPMG LLP*, No. SACV04-1227GLT(MANX), 2004 WL 3761875 (C.D. Cal. Dec. 14, 2004) .........................................................7

*Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013) ................................8, 9

*Reed v. Florida Metropolitan Univ., Inc.*, 681 F.3d 630 (5th Cir. 2012).....................9

*Regents of Univ. of Cal. v. Principal Fin. Group*, 412 F. Supp. 2d 1037 (N.D. Cal. 2006) ........................................................5

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010)......................................................................8, 9

*Varela v. Lamps Plus, Inc.*, 701 F. App'x 670 (9th Cir. Aug. 3, 2017) .......................9

## STATE CASES

*Boucher v. Alliance Title Co.*, 25 Cal. Rptr. 3d 440 (Ct. App. 2005) ..........................7

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BILATERAL ARBITRATION

*Laymon v. J. Rockcliff, Inc.*, 219 Cal. Rptr. 3d 185 (Ct. App. 2017) .............................5

*Thomas v. Westlake*, 139 Cal. Rptr. 3d 114 (Ct. App. 2012) ........................................7

## OTHER AUTHORITIES

9 U.S.C. § 2 ....................................................................................................................4

42 U.S.C. § 18091(2)(B) ...............................................................................................4

Cal. Civ. Code §§ 1550, 1565........................................................................................5

Cal. Health & Safety Code § 1363.1 ............................................................................5

9th Cir. R. 36-3 ..............................................................................................................9

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BILATERAL ARBITRATION

Defendants Health Net, Inc., Health Net Life Insurance Company, Health Net of California, Inc., Managed Health Network, Inc., and Centene Corporation (collectively "Health Net"), by undersigned counsel, hereby move to compel bilateral arbitration between Plaintiff and Defendants.

## BACKGROUND

Plaintiff Ohad Barkan brings this action against a number of entities that Plaintiff treats collectively as "Health Net."  The claims in the Complaint relate to a group Blue & Gold HMO Plan that Mr. Barkan received through the University of California, which employs his wife, Ms. Rachel King.  Complaint ¶ 18.  The policy was issued by Health Net of California, Inc.

To enroll Mr. Barkan in her University of California health plan, Ms. King had to fill out an online open enrollment form provided by the University of California. *See* Decl. of Irene Wong ¶ 3 ("Wong Decl.").  The online enrollment form referenced arbitration at least twice.  On a page entitled "Participation Terms and Conditions," the applicant is presented with a scroll box with two short introductory paragraphs and then a series of numbered paragraphs.  *Id.*, Exhibit 1 at 1–2.  The first numbered paragraph in the box, which was in relevant part visible without scrolling, informs the applicant that all claims submitted under the plan are subject to binding arbitration. *Id.*  The first sentence of the paragraph states, "With the exception of benefits provided or administered by Optum Behavioral Health, UC-sponsored medical plans require resolution of disputes through arbitration."  *Id.*  Because the arbitration provision also applies to disputes for professional negligence, as required by California law the scroll box then continues, "IT IS UNDERSTOOD AND YOU AGREE THAT ANY DISPUTE AS TO MEDICAL MALPRACTICE . . . WILL BE DETERMINED BY SUBMISSION TO ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND NOT BY A LAWSUIT OR RESORT TO COURT PROCESS . . . ."  *Id.*  The scroll box then provides, "For more information about each plan's arbitration provision, please see the appropriate plan booklet or call the

1  plan." *Id.*  Directly below the scroll box, the applicant is required to check a box

2  certifying, "I acknowledge that I have read the Participation Terms and Conditions."

3  *Id.*

4  The "Review & Confirm" page of the online open enrollment form likewise

5  informs the applicant that arbitration is required.  At the bottom of this page, the

6  applicant must click a box stating, "I understand that by confirming, I have created an

7  electronic signature authorizing the University to make these changes [to my plan]."

8  *Id.* at 3.  Below that statement, to finish enrollment, the participant must click a

9  button labeled, "Confirm."  *Id.*

10  Directly above the "electronic signature" statement, the form contains a

11  provision again informing the applicant that claims submitted under the plan must be

12  arbitrated.  *Id.*  The paragraph containing the arbitration provision is short and

13  effectively set off from the information immediately above it.  Again, because the

14  arbitration provision also applies to claims for professional negligence, as required by

15  California law that language states, "By signing this contract you are agreeing to have

16  an issue of medical malpractice decided by neutral arbitration and you are giving up

17  your right to a jury or court trial."  *Id.*  It then directs the applicant to "[s]ee

18  appropriate plan booklet for more information."  *Id.*

19  Ms. King completed the enrollment process and was issued health coverage

20  from Health Net of California.  The "appropriate plan booklet" to which Ms. King

21  and Mr. Barkan were directed in this instance is the Evidence of Coverage ("EOC")

22  issued by Health Net of California, Inc.  As the online open enrollment form stated,

23  this document contained a more detailed arbitration provision.  *See* Wong Decl. Ex. 2

24  at 59–60.  That provision states:

25  As a condition to becoming a Health Net Member, you agree to submit all disputes you may have with Health Net, except those described below, to final and binding arbitration.  Likewise, Health Net agrees to arbitrate all such disputes. This mutual agreement to arbitrate disputes means that both you and Health Net are bound to use binding arbitration as the final means of resolving disputes

1
2
3
4
5

> that may arise between the parties, and thereby the parties agree to forego any right they may have to a jury trial on such disputes. However, no remedies that otherwise would be available to either party in a court of law will be forfeited by virtue of this agreement to use and be bound by Health Net's binding arbitration process. This agreement to arbitrate shall be enforced even if a party to the arbitration is also involved in another action or proceeding with a third party arising out of the same matter.

6
7
8
9
10

*Id.* at 59.  The provision further states that the Federal Arbitration Act ("FAA") governs the parties' arbitration.  *Id.*  The provision requires the parties to share arbitrator fees equally, and it permits members to seek hardship waivers, under which Health Net would pay a greater share or all of the fees of the arbitration.  *Id.* at 60.

11
12
13
14
15
16
17
18
19
20
21
22
23

     The basis of the Complaint is an allegation that, in January 2018, Health Net briefly denied Mr. Barkan's request for a ventilator and a drug to treat his amyotrophic lateral sclerosis ("ALS").  According to the Complaint, prior to 2018 "Mr. Barkan had been receiving his health care coverage through an employer-provided plan with Cigna . . . ."  Complaint ¶ 39.  "Mr. Barkan discontinued his Cigna plan January 1, 2018, and enrolled in the Health Net Blue & Gold HMO with his wife and son."  *Id.*  According to the Complaint, on January 10, 2018, Mr. Barkan's physician requested authorization from Health Net for Mr. Barkan to receive a non-invasive ventilator and the drug Radicava.  *Id.* ¶¶ 40–41.  Mr. Barkan alleges that Health Net initially denied authorization for these treatments on or around January 18, 2018.  *Id.* ¶¶ 42, 45.  He further alleges that he appealed these determinations and that Health Net reversed course and approved these treatments on or around January 27, 2018.  *Id.* ¶¶ 55–56.

24
25
26
27
28

     At the time that Mr. Barkan's physician requested authorization for the ventilator and the drug, Health Net understood that Mr. Barkan was still covered by his Cigna plan.  *Id.* ¶ 58.  Upon learning of Mr. Barkan's diagnosis of ALS, Health Net also promptly arranged for a Case Manager to assist Mr. Barkan and coordinate

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BILATERAL ARBITRATION

his care.  Wong Decl. ¶ 5, Exhibit 3.  The Complaint does not allege that Mr. Barkan has had any further issues with his Health Net coverage since his appeals in January.

## ARGUMENT

Ms. King (and Mr. Barkan, as an enrolled family member in her plan) agreed to submit "all disputes" between them and Health Net to binding, bilateral arbitration. Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The arbitration agreement entered into between Ms. King and Health Net is binding and enforceable, and it covers this dispute brought by Mr. Barkan. Moreover, all Defendants are entitled to enforce the arbitration agreement.

## I.      The FAA Governs the Arbitration Clause.

With a few exceptions not relevant here, the FAA applies to any arbitration provision in a "contract evidencing a transaction involving commerce."  9 U.S.C. § 2. The FAA's reach extends to "the broadest permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam).  The contract between Ms. King and Health Net of California, Inc. falls within the expansive reach of the FAA.  The health insurance and health care markets in the aggregate undoubtedly have a "broad impact . . . on the national economy," placing them within the ambit of Congress' power.  *Id.* at 58; *see also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 531–32 (2012) (per curiam) (applying FAA to contract between nursing home and resident); 42 U.S.C. § 18091(2)(B) (Congressional finding that "[h]ealth insurance and health care services are a significant part of the national economy").

## II.     The Arbitration Provision Is Enforceable.

The FAA reflects a "liberal federal policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S 333, 339 (2011) (internal quotation marks omitted).  The statute renders arbitration provisions enforceable "according to their

terms." *Id.* at 344 (internal quotation marks omitted).  Courts apply state law to determine whether an arbitration provision is valid, except that states may not create defenses to the enforcement of such provisions that "apply only to arbitration" or otherwise unfairly disfavor the practice.  *Id.* at 339–40.

Under California law, there are four elements required for the existence of a contract:  "1) parties capable of contracting; 2) their mutual consent; 3) a lawful object; and 4) sufficient consideration."  *Regents of Univ. of Cal. v. Principal Fin. Group*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) (citing Cal. Civ. Code §§ 1550, 1565).  Those elements are met here.  Health Net and Ms. King were capable of contracting when she signed the online open enrollment form.  Ms. King manifested her consent to Health Net's offer of insurance, including the arbitration agreement, by clicking the box which says that she consented to create an "electronic signature." *See* Wong Decl., Exhibit 1 at 3.  Arbitration agreements are lawful in California.  *See, e.g.*, *Laymon v. J. Rockcliff, Inc.*, 219 Cal. Rptr. 3d 185, 192 (Ct. App. 2017) (recognizing that "California has a strong public policy in favor of arbitration" (internal quotation marks omitted)).  And even setting aside the consideration inherent in the insurance contract itself, the parties' mutual promises to arbitrate and give up a judicial forum are sufficient consideration in themselves.  *See, e.g.*, *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002).

In the Complaint, Mr. Barkan signaled that he may argue that the online open enrollment form's disclosure is insufficient under California law.  *See* Complaint ¶¶ 48–50 (citing Cal. Health & Safety Code § 1363.1).  Defendants respectfully disagree that the online open enrollment form fails to comply with that section, and would further note that the University of California, not Defendants, created and maintained the online open enrollment form for the convenience of its employees.  Notably, Mr. Barkan does not appear to suggest that he was unaware of the arbitration provision or that the arbitration provision in the Evidence of Coverage—which the online open enrollment form specifically asks the applicant to view prior to requesting coverage,

and over which Health Net of California, Inc. does have control —is deficient as a matter of form.

### III.    All of Mr. Barkan's Claims Fall Within the Arbitration Clause.

Mr. Barkan's various claims all center around one allegation—that Health Net wrongfully denied his claims for two treatments related to his ALS for the brief period of approximately 10 days.  All of the claims clearly fall within the broad arbitration provisions in the online open enrollment form and Evidence of Coverage.

"[T]he scope of an arbitration agreement is a matter of contract."  *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013).  If there is any doubt over the scope of an agreement, that doubt "should be resolved in favor of arbitration."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983).

Here, the relevant arbitration provisions are very broad.  The online open enrollment form requires arbitration of "disputes" between the parties.  Wong Decl., Exhibit 1 at 1.  The Evidence of Coverage's provision also has a broad scope, requiring arbitration of "disputes or disagreements . . . regarding the construction, interpretation, performance or breach of this *Evidence of Coverage* or regarding other matters relating to or arising out of Your Health Net membership."  Wong Decl., Exhibit 2 at 59.  The term "relating to" signals a broad arbitration provision.  *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011).

Broad arbitration provisions comfortably encompass the statutory and declaratory relief claims that Mr. Barkan brings here.  Like Mr. Barkan here, the plaintiffs in *Ferguson* brought claims under the Unfair Competition Law and the Consumer Legal Remedies Act.  733 F.3d at 931.  The Ninth Circuit had no difficulty finding that the "sufficiently broad" language in the relevant arbitration agreements encompassed those claims.  *Id.* at 938.  Thus, all of Mr. Barkan's claims fall within the scope of the arbitration provisions.

## IV.    Mr. Barkan Is Bound By, and All Defendants May Enforce, the Arbitration Clause.

Well-recognized principles of law permit all Defendants to enforce the agreement against Mr. Barkan, even though only Health Net of California, Inc. is a party to the contract.  Mr. Barkan alleges that "[e]ach of the defendants is, and was at all times relevant to this action, the agent . . . of each of the other defendants." Complaint ¶ 9.  In *Thomas v. Westlake*, 139 Cal. Rptr. 3d 114 (Ct. App. 2012), the court cited similar language from a complaint to hold that non-signatories could enforce an arbitration provision as alleged agents of the signatory, *id.* at 120–21; *see also Reddam v. KPMG LLP*, No. SACV04-1227GLT(MANX), 2004 WL 3761875, at *4 (C.D. Cal. Dec. 14, 2004) (holding that non-signatories could enforce arbitration agreement where Plaintiffs alleged that signatory and non-signatories "were agents of each other," complaint "treated [them] as a single entity," and they were "referred to" under a single name).

Likewise, under principles of equitable estoppel, Mr. Barkan may not attempt to enforce the insurance contract against non-signatories but evade its arbitration obligations.  "[A] party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved."  *Boucher v. Alliance Title Co.*, 25 Cal. Rptr. 3d 440, 447 (Ct. App. 2005).  Here, Mr. Barkan purports to be able to enforce the contract with Health Net of California, Inc. against all the Defendants.  Complaint ¶¶ 73–83.[1] If he claims the ability to enforce the contract against a defendant, then he is bound by the arbitration provision for his claims against that defendant.  *See Boucher*, 25 Cal. Rptr. 3d at 447; *see also Reddam*, 2004 WL 3761875, at *6 (holding that equitable estoppel theory permitted non-signatory defendants to enforce arbitration clause).

---

[1] To be sure, Defendants disagree that the contract binds any defendant other than the signatory, Health Net of California, Inc.  But for the purposes of estoppel, it is plaintiff's allegations that control.  *See Reddam*, 2004 WL 3761875, at *6 (finding that estoppel was appropriate based upon "the *allegations* in this case" (emphasis added)).

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BILATERAL ARBITRATION

**V.      The Arbitration Provision Does Not Permit Class Arbitration.**

Mr. Barkan purports to bring the claims at issue in this case on behalf of a class comprising "[a]ll California residents enrolled in Health Net's Blue & Gold HMO, or Health Net's private individual and family HMO health care service plans and PPO insurance policies sold through the Covered California exchange on or after October 1, 2013."  Complaint ¶ 61.  Mr. Barkan must arbitrate his claims, however, and the parties' arbitration agreement does not permit class arbitration.  The availability of class arbitration is a gateway question for the court to decide.  *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 598–99 (6th Cir. 2013); *Eshagh v. Terminix Int'l Co.*, 588 F. App'x 703, 704 (9th Cir. 2014).

In *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), the Supreme Court emphasized that class arbitration is unavailable unless a contract affirmatively permits it.  In that case, the contract at issue was "silent" on class arbitration, and the arbitration panel had concluded that silence effectively was permission for class arbitration.  *Id.* at 684.  This was backwards, the Supreme Court held; the "differences between bilateral and class-action arbitration are too great" for silence to carry such weight.  *Id.* at 687; *see also Concepcion*, 563 U.S. at 348–50 (emphasizing ways in which "[a]rbitration is poorly suited to the higher stakes of class litigation").  Rather, class arbitration is available only if the agreement manifested "a contractual basis for concluding that the part[ies] *agreed*" to such a procedure.  *Stolt-Nielsen*, 559 U.S. at 684.  Such an agreement cannot be "infer[red] solely from the fact of the parties' agreement to arbitrate."  *Id.* at 685.

Here, the arbitration provisions in the online open enrollment form and Evidence of Coverage are both silent on the issue of class arbitration.  Neither provision mentions it.  *See* Wong Decl., Exhibit 1; Wong Decl., Exhibit 2 at 59–60.  In fact, the Evidence of Coverage's language strongly suggests that only bilateral arbitration is available.  It emphasizes that it covers only claims arising under "this *Evidence of Coverage*" and claims "relating to or arising out of *your Health Net*

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BILATERAL ARBITRATION

*membership*."   Wong Decl., Exhibit 2 at 59 (second emphasis added).  This language would not include claims of absent class members, which would arise under their respective policies (not Ms. King's), and would relate to their respective Health Net memberships (not Ms. King's).  *See, e.g.*, *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 945 (N.D. Cal. 2015) (arbitration clause's focus on disputes "between [defendant] and the *individual* Contractor" suggested unavailability of class arbitration); *Reed Elsevier*, 734 F.3d at 599 (clause's limitation to claims "'arising from or in connection with *this Order*'" supported district court's holding that class arbitration was not available).

    To the extent that the Ninth Circuit's decision in *Varela v. Lamps Plus, Inc.*, 701 F. App'x 670 (Aug. 3, 2017), *cert. granted*, 138 S. Ct. 1697 (U.S. Apr. 30, 2018), contrasts with this analysis, *Varela* is unpublished and non-binding on this court.  *See* 9th Cir. R. 36-3.  Defendants respectfully submit that *Varela*—which is on review at the Supreme Court—is unpersuasive and inconsistent with *Stolt-Nielsen*.  The features that the Ninth Circuit focused upon to find class arbitration available in *Varela*—the breadth of the arbitration clause, an explicit jury trial waiver, and a reservation of remedies available at law, *see* 701 F. App'x at 672—are features of nearly all well-drafted arbitration clauses.  *Varela* essentially ignored the Supreme Court's command in *Stolt-Nielsen* that a court may not "infer solely from the fact of the parties' agreement to arbitrate" that class arbitration is available.  559 U.S. at 685. Other circuits, reading *Stolt-Nielsen* more faithfully, have determined that similar features do not suggest the availability of class arbitration.  *See AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553 (6th Cir. 2016) ("broadly-worded arbitration clause" did not suggest availability of class arbitration); *Reed v. Florida Metropolitan Univ., Inc.*, 681 F.3d 630, 641–43 (5th Cir. 2012) (recognizing that "'any dispute'" and "'any remedy'" clauses did not support availability of class arbitration), *abrogated in part on other grounds by Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013); *Opalinski v. Robert Half Int'l, Inc.*, 677 F. App'x 738, 742–43 (3d Cir. 2017)

1   (holding that class arbitration was unavailable and recognizing that breadth of clause

2   and specific permission to arbitrate certain statutory causes of action did not support

3   availability of class arbitration).

4                          **CONCLUSION**

5           For the foregoing reasons, the Court should compel bilateral arbitration

6   between Mr. Barkan and Defendants.

7

8   Dated:  September 7, 2018              Respectfully submitted,

9                                          **WILLIAMS & CONNOLLY LLP**

10                                         By:  */s/ Steven M. Cady*
11                                         Brendan V. Sullivan, Jr.
                                           (admitted *Pro Hac Vice*)
12                                         **E-mail:**  bsullivan@wc.com
                                           William R. Murray, Jr.
13                                         (admitted *Pro Hac Vice*)
                                           **E-mail:**  bmurray@wc.com
14                                         Steven M. Cady
                                           (admitted *Pro Hac Vice*)
15                                         **E-mail:**  scady@wc.com
                                           725 Twelfth Street, N.W.
16                                         Washington, DC  20005-5901
                                           Telephone:  (202) 434-5000
17                                         Facsimile:  (202) 434-5029

18                                         **MANATT, PHELPS &
                                           PHILLIPS, LLP**
19                                         John M. LeBlanc (SBN 155842)
                                           **E-mail:**  JLeBlanc@manatt.com
20                                         Ileana M. Hernandez (SBN 198906)
                                           **E-mail:**  IHernandez@manatt.com
21                                         Michael C. Godino (SBN 274755)
                                           E-mail:  MGodino@manatt.com
22                                         11355 W. Olympic Blvd
                                           Los Angeles, CA  90064
23                                         Telephone:  (310) 312-4228
                                           Facsimile:  (310) 914-5855

24

25

26

27

28

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BILATERAL ARBITRATION

1

## CERTIFICATE OF SERVICE

2         I certify that on September 7, 2018, I caused to be filed the foregoing document

3    entitled DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO

4    COMPEL BILATERAL ARBITRATION and accompanying declaration and its

5    exhibits electronically through the CM/ECF system, which caused counsel of record

6    in this matter to be served by electronic means.

7

8                       By:   */s/ Steven M. Cady*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BILATERAL ARBITRATION